# * * § 362 INFORMATION COVER SHEET * *

Theresa J. & Robert Gavin Moore
DEBTOR

Case No: 14-13791-abl

MOTION #:

Association of Apartment Owners
MOVANT   of Ala Wai Mansion

CHAPTER: 11

### Certification of Attempt to Resolve the Matter Without Court Action:

*Moving counsel hereby certifies that pursuant to the requirements of LR 4001(a)(2), an attempt has been made to resolve the matter without court action, but movant has been unable to do so.*

Date: June 30, 2014    Signature: /s/ Ryan A. Andersen

*Attorney for Movant*

PROPERTY INVOLVED IN THIS MOTION: 2029 Ala Wai Blvd, #PH-1, Honolulu, HI 96815
NOTICE SERVED ON: Debtor(s) ✓ ; Debtor's counsel _____ ; Trustee _____ ;
DATE OF SERVICE: May 13, 2014

| MOVING PARTY'S CONTENTIONS: | DEBTOR'S CONTENTIONS: |
|---|---|
| The EXTENT and PRIORITY of LIENS: | The EXTENT and PRIORITY of LIENS: |
| 1st  Movant: Statutory Lien $96,472.56 | 1st |
| 2nd Wells Fargo: Mortgage $1,003,539.37 | 2nd |
| 3rd | 3rd |
| 4th | 4th |
| Other: | Other: |
| Total Encumbrances: $1,100,011.93 | Total Encumbrances: |
| APPRAISAL of OPINION as to VALUE: $800,000 | APPRAISAL of OPINION as to VALUE: |

| TERMS of MOVANT'S CONTRACT with the DEBTOR(S): | DEBTOR'S OFFER of "ADEQUATE PROTECTION" for MOVANT : |
|---|---|
| Amount of Note: Condo Association Dues | . |
| Interest Rate: | . |
| Duration: | . |
| Payment per Month: | . |
| Date of Default: | . |
| Amount in Arrears: | . |
| Date of Notice of Default: | . |
| SPECIAL CIRCUMSTANCES: | SPECIAL CIRCUMSTANCES: |
| SUBMITTED BY: Ryan A. Andersen, 12321  /s/ Ryan A. Andersen | SUBMITTED BY: SIGNATURE: |

**Electronically Filed: June 30, 2014**

**ANDERSEN LAW FIRM, LTD.**
Ryan A. Andersen, Esq.
Nevada Bar No. 12321
415 South 6th Street, Suite 203B
Las Vegas, Nevada 89101
Email: *randersen@andersenlawlv.com*
Phone: 702-522-1992
Fax:    702-825-2824

*Attorney for Secured Creditor Association of
Apartment Owners of Ala Wai Mansion*

# UNITED STATES BANKRUPTY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>THERESA JEAN MOORE and ROBERT GAVIN MOORE,<br><br>Debtors. | Case No.: 14-13791-ABL<br>Chapter 11<br><br>**MOTION FOR RELIEF FROM THE AUTOMATIC STAY**<br><br>Hearing Date: August 6, 2014<br>Hearing Time: 1:30 p.m. Pacific time<br>Courtroom:    1 |

Secured creditor Association of Apartment Owners of Ala Wai Mansion (the "Association"), by and through its counsel of record, Ryan A. Andersen, Esq. of the Andersen Law Firm ("Counsel"), hereby move the Court for entry of an terminating the automatic stay for cause pursuant to Sections 362(d)(1) & (4).

This Motion is supported by: the following Memorandum of Points and Authorities; the Declaration of Kyle Drake (the "Drake Declaration"), filed concurrently herewith; all papers and pleadings filed in the above-captioned case and in all previous cases under Title 11 of the United States Code filed in the past by the Debtors and their confederates, judicial notice of which is requested pursuant to Rule 201 of the Federal Rules of Evidence; and any arguments of counsel offered in support of the Motion during any hearing held on the Motion.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Introduction

Robert Gavin Moore ("Mr. Moore") is the purported fractional owner of a certain condominium penthouse (the "Penthouse") located in Honolulu, Hawaii, and owned by Russell Jack Grisham ("Grisham"). Mr. Moore allegedly acquired the Penthouse in November of 2013, solely to assist Grisham in his scheme to hinder and delay the Association's legitimate collection efforts. His wife, Teresa Jean Moore ("Ms. Moore"), is a serial bankruptcy filer and a vexatious litigant who, having filed for bankruptcy six previous times in the District of Hawaii, Central District of California, and Northern District of California, has decided to try out the Nevada Bankruptcy Court, despite having no clear connection to the State of Nevada. Grisham has been using bankruptcy to defeat the Association's legitimate collection efforts for years, and now the Debtors have filed the above-captioned bankruptcy case to perpetuate and assist with this fraudulent scheme.

## II. Jurisdiction

The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). If it is determined the Court cannot enter final orders or judgment in this core proceeding consistent with Article III of the United States Constitution, Movants consent to the entry of final orders or judgment by this Court.

The relief requested herein is premised on Sections 105(a) and 362(d) of the United States Bankruptcy Code, Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure, and Local Rule 4001.[1]

//

//

//

---

[1] On June 13, 2014, counsel for the Association sent a letter to the Debtors via FedEx Overnight, and this letter was successfully delivered to two of the three addresses listed on the Debtors' bankruptcy petition. While the purpose of this letter was to resolve the requested relief from stay without Court involvement, as required by LR 4001, to date, the Debtors have not responded to the June 13, 2014 letter.

### III. Statement of Facts

*A. Failure to Pay Association Dues and Subsequent Legal Actions*

Grisham is the legal owner of the Penthouse, which is generally located at 2029 Ala Wai Boulevard, Unit PH-1, Honolulu, Hawaii 96815 and more particularly described as:

ALL THE PREMISES COMPRISING A PORTION OF THE "ALA WAI MANSION," A CONDOMINIUM PROJECT (HEREINAFTER CALLED THE "PROJECT") AS DESCRIBED IN AND ESTABLISHED BY DECLARATION OF HORIZONTAL PROPERTY REGIME RECORDED AS LAND COURT DOCUMENT NO. 490922, AS AMENDED, OF OFFICIAL RECORDS (HEREINAFTER CALLED THE "DECLARATION"), SAID PREMISES BEING MORE DESCRIBED AS FOLLOWS:

FIRST: APARTMENT NO. PH-A, AS SHOWN ON THE PLANS THEREOF FILED AS CONDOMINIUM MAP NO. 92 (HEREINAFTER CALLED THE CONDOMINIUM MAP) TOGETHER WITH THE FOLLOWING APPURTENANT EASEMENTS:

A) AN EXCLUSIVE EASEMENT TO USE PARKING SPACE NO. L-15 AND STORAGE CUBICLE A AS SHOWN ON CONDOMINIUM MAP.

B) NONEXCLUSIVE EASEMENTS IN THE COMMON-ELEMENTS DESIGNED FOR SUCH PURPOSES FOR INGRESS TO, EGRESS FROM, UTILITY SERVICES FOR, AND SUPPORT OF SAID APARTMENT, IN THE OTHER COMMON ELEMENTS FOR USE ACCORDING TO THEIR RESPECTIVE PURPOSES, SUBJECT ALWAYS TO THE EXCLUSIVE USE OF THE LIMITED COMMON ELEMENTS AS PROVIDED IN THE DECLARATION, AS AMENDED, AND IN THE OTHER APARTMENTS AND COMMON ELEMENTS OF THE PROJECT FOR SUPPORT.

SECOND: AN UNDIVIDED 5.68 PERCENT INTEREST IN ALL COMMON ELEMENTS OF THE PROJECT AS ESTABLISHED FOR SAID APARTMENT BY THE DECLARATION OR SUCH OTHER FRACTIONAL OR PERCENTAGE INTEREST AS HEREAFTER ESTABLISHED FOR SAID APARTMENT BY AN AMENDMENT OF THE DECLARATION (HEREAFTER REFERRED TO AS LESSEE'S "PROPORTIONATE SHARE"), AS TENANTS IN COMMON WITH THE OTHER OWNERS AND TENANTS THEREOF, SUBJECT TO ALL EASEMENTS APPURTENANT TO ANY APARTMENT OF THE PROJECT AND TO ALL ENCUMBRANCES, EXCEPTIONS AND RESERVATIONS NOTED BY SAID DECLARATION.

A LEASEHOLD ESTATE AS CREATED BY THAT CERTAIN LEASE DATED MAY 2, 1972, EXECUTED BY ALA WAI MANSION, INC., A HAWAII CORPORATION, AS LESSOR, AND LEROY PERCY BASS AND SHIRLEY JEAN BASS, HUSBAND AND WIFE, AS TENANTS BY THE ENTIRETY, AS LESSEE,

ANDERSEN LAW FIRM, LTD.
415 South 6th Street
2nd Floor, Suite 203-B
Las Vegas, Nevada
702-522-1992

> FOR A TERM FROM MAY 2, 1972 AND ENDING DECEMBER 31, 2050, RECORDED AS LAND COURT DOCUMENT NO. 580307 OF OFFICIAL RECORDS.
>
> THE LESSEE'S INTEREST UNDER THE LEASE HAS BEEN ASSIGNED TO RUSSELL JACK GRISHAM, UNMARRIED, BY MESNE ASSIGNMENTS RECORDED OCTOBER 9, 2003 AS LAND COURT DOCUMENT NO. 3007815 OF OFFICIAL RECORDS.
>
> ALL OF THAT CERTAIN PARCEL OF LAND SITUATED AT WAIKIKI, CITY AND COUNTY OF HONOLULU, STA TE OF HAW All, DESCRIBED AS FOLLOWS:
>
> LOT 185-A, AREA 9,914 SQUARE FEET, MORE OR LESS, AS SHOWN ON MAP 63, FILED WITH LAND COURT APPLICATION NOS. 537 AND 550 OF JOHN FRANCIS BOWLER AND AUGUST AHRENS, LIMITED.
>
> BEING A PORTION OF THE PROPERTY DESCRIBED IN AND COVERED BY TRANSFER CERTIFICATE OF TITLE NO. 125,594.

*See* Drake Declaration ¶ 5. The Penthouse is one of several condominium units located in the Ala Wai Mansion Building, and all condo owners are voting members the Association. *See* Drake Declaration ¶ 6. To pay for common area maintenance and repair, utilities, and for other expenses, all condo owners are required to pay monthly maintenance fees to the Association ("Maintenance Fees"). *See* Drake Declaration ¶ 6. However, since approximately April of 2008, Grisham has unilaterally decided he does not have to pay Maintenance Fees. *See* Drake Declaration ¶ 8. As of the filing of the instant Motion, Grisham owes the Association a total of $96,472.56, consisting of $81,761.37 in maintenance fees, $14,080.30 in legal fees, $500.00 in late charges, and $130.89 in returned check fees. *See* Drake Declaration ¶ 9. Maintenance Fees and legal fees continue to accrue. *See* Drake Declaration ¶ 9.

Faced with Grisham's continuing refusal to pay required Maintenance Fees, the Association had no choice but to attempt to foreclose on its statutory lien on the Penthouse.[2] *See* Drake Declaration ¶ 10. Grisham and his confederates have stymied the Association's collection efforts at every turn. *See* Drake Declaration ¶ 10. Specifically, since February 1, 2010, Grisham has filed for bankruptcy

---

[2] Under Hawaii state law, all unpaid sums assessed by a condominium association "shall constitute a lien on the unit with priority over all other liens . . ." and that such unpaid sums "may be foreclosed by action or by nonjudicial or power of sale foreclosure procedures." Haw. Rev. Stat. § 514B-146.

five separate times in the District of Hawaii, using the bankruptcy system to wrongfully frustrate the Association's legitimate collection efforts:

- Case No. 10-00284, chapter 7 case filed on February 1, 2010, discharge issued on May 4, 2010;[3]
- Case No. 11-00649, chapter 7 case filed on March 10, 2011, dismissed on April 12, 2011 with 180 day bar to refiling;
- Case No. 11-02924, chapter 13 petition filed on November 8, 2011, dismissed January 11, 2013;
- Case No. 13-00578, chapter 11 case filed on April 9, 2013, dismissed October 22, 2013; and
- Case No. 14-500, chapter 13 case filed April 11, 2014.

Grisham has used his bad faith bankruptcy filings to delay foreclosure sales and remain in the Penthouse without paying his fair share of the Maintenance Fees, a heavy burden borne by the Association and the other property owners. *See* Drake Declaration ¶ 11. The Association was scheduled to foreclose on its statutory lien on May 29, 2014. *See* Drake Declaration ¶ 12. Grisham thought his April 11, 2014 bankruptcy filing would stop this foreclosure sale, just as it had stopped foreclosure sales in the past. However, because of his prior bankruptcy filings, there was no automatic stay in Grisham's most recent bankruptcy case. Unfortunately for the Association, Grisham and his confederates was prepared for this eventuality.

As later learned by the Association, on November 18, 2013, a deed was filed with the Hawaii Land Court, purportedly transferring a one-half interest in the Penthouse to Russell Jack Grisham. *See* Drake Declaration ¶ 13. It is not believed the Debtors paid any genuine consideration to Grisham for the transfer, as the transfer was intended only as a furtherance of Grisham and the Debtors' fraudulent scheme and as a further effort to hinder and delay the Association's collection efforts.

### *B. The Debtors File Bankruptcy*

The Debtors filed a chapter 11 bankruptcy petition (the "Petition") at 10:55 a.m. on May 29, 2014. ECF No. 1. This was the same day the most recent foreclosure sale was supposed to take place, and the Association received notice of the Debtors' bankruptcy filing approximately 90 minutes prior

---

[3] Grisham discharged approximately $23,925 in Maintenance Fees owed to the Association through his 2010 bankruptcy case, and this amount is not included in the $96,472.56 currently owed to the Association.

to when the sale was to take place. *See* Drake Declaration ¶ 14. The Debtors did not file any schedules or statements with the Petition. On June 16, 2014, the Debtors filed their Schedule A, Schedule E, Schedule F, and Schedule H. ECF No. 17. The Debtors obtained an extension of time to June 26, 2014 for the Debtors to file the remaining schedules and statements. ECF No. 20. The Debtors filed the remainder of their schedules and statements on June 26, 2014. ECF No. 23.

A review of the Petition and schedules raises concerns as to the Debtors' good faith in filing bankruptcy. The Debtors' each purportedly signed the Petition under penalty of perjury, declaring the information given therein to be true and correct. Mr. Moore lists his physical address as 4251 Laurel Canyon Blvd., Studio City, California, and his county of residence or his principal place of business as Los Angeles. ECF No. 1. Ms. Moore, however, lists her physical address as 8686 Queensbrook Court, Las Vegas, Nevada, 89117 and her county of residence or her principal place of business as Clark County. ECF No. 1. Troublingly, there is no such address as 8686 Queensbrook Court, Las Vegas, Nevada. Ms. Moore lists her mailing address as 1333 N. Buffalo Drive, Suite 220, Las Vegas, Nevada, but her connection to this address is unknown. ECF No. 1. The Debtors' Schedule A lists real property located in Hawaii and California, but none in Nevada. Put simply, the Debtors' connection to Nevada is tenuous at best. The Debtors were aware of Grisham's bankruptcy at the time they filed the Petition; they listed it as a pending bankruptcy of a spouse, partner, or affiliate. ECF No. 1.

As of the filing date, the Debtors listed only two creditors on the creditor matrix: Ala Wai Mansion, Inc. and the Association, and certified that the creditor matrix was true and correct to the best of their knowledge. ECF No. 1. The Debtors list $22,459.12 of unsecured debt on their Schedule F, most of it appearing to be medical in nature, but do not list the Association as a creditor. ECF No. 17. The Debtors Schedule D similarly does not list the Association as a creditor. ECF No. 23.

### *C. The Debtors' Prior Bankruptcies*

Ms. Moore filed for bankruptcy six times before filing the instant bankruptcy case:

- Case No. 93-47195, Northern District of California, chapter 7 bankruptcy case filed on October 12, 1993, converted from chapter 13 on November 26, 1993, discharge granted on April 14, 1994;
- Case No. 96-53212, Northern District of California, chapter 13 bankruptcy case filed on April 29, 1996, discharge entered on August 22, 2001;

- Case No. 04-15349, Central District of California, chapter 7 bankruptcy case filed on August 10, 2004, converted from chapter 13 on January 11, 2007, discharge granted on October 19, 2007, case closed on
- Case No. 07-12387, Central District of California, chapter 13 filed on July 11, 2007, dismissed on September 5, 2007;
- Case No. 07-14758, Central District of California, chapter 13 filed on December 4, 2007, dismissed on August 5, 2008;
- Case No. 10-00771, District of Hawaii, chapter 7 bankruptcy case filed on March 13, 2013, converted from chapter 13 on March 29, 2011, closed September 3, 2013;

It appears the Debtors' current bankruptcy case is Mr. Moore's first bankruptcy case. None of these prior bankruptcy cases were filed in Nevada.[4]

## IV. Argument

### A. Relief from the Automatic Stay for Cause

Subsection (d)(1) of Section 362 provides:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
    (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

11 U.S.C. § 362(d).  As the party requesting relief, the Association "has the burden of proof on the issue of the debtor's equity in the property." 11 U.S.C. § 362(g)(1). The Debtors bear "the burden on all other issues." 11 U.S.C. § 362(g)(2).

Here, relief from the automatic stay is appropriate for cause, as the instant bankruptcy case was not commenced in good faith. *See Duvar Apt. v. FDIC (In re Duvar Apt.)*, 205 B.R. 196, 200 (B.A.P. 9th Cir. Cal. 1996) (citations omitted). "A creditor can establish a prima facie case of bad faith filing by showing the transfer of distressed property to the debtor within close proximity to the bankruptcy filing." *Id.* (citing *In re Yukon Enter., Inc.* 63 B.R. 919, 921 (Bankr. C.D. Cal. 1984)). After the creditor

---

[4] Ms. Moore is a prolific pleading filer, and, indeed, seems to be a vexatious litigant. In Case No. 04-15349, there are 356 docket entries, many by Ms. Moore acting pro se, including one motion for recusal and one appeal, which was dismissed. In Case No. 10-00771, there are 575 docket entries, many by Ms. Moore acting pro se, and four appeals by Ms. Moore. Of the appeals in Case No. 10-00771, two appeals were dismissed by the District Court, one was dismissed by the District Court and subsequently dismissed by the Ninth Circuit Court of Appeals, and in one the District Court affirmed the Bankruptcy Court, with the Ninth Circuit Court of Appeals subsequently affirming both the Bankruptcy Court and the District Court. The Court is requested to take judicial notice of the dockets in these prior bankruptcy cases pursuant to Rule 201(b) of the Federal Rules of Evidence.

establishes a prima facie case of bad faith, "the burden shifts to the debtor to demonstrate a good faith business reason for the transfer and the filing." *Id.* (citing *In re Eighty South Lake, Inc.*, 63 B.R. 501, 508 (Bankr. C.D. Cal. 1986), *aff'd*, 81 B.R. 580 (B.A.P. 9th Cir. 1987). If the creditor proves also "'that its substantive or procedural rights have been adversely affected by the transfer and filing, 'cause' is established . . . and the Court must lift the stay.'" *Id.* at 200-01 (citing *Yukon*, 63 B.R. at 922).

Grisham transferred the Penthouse to Mr. Moore as part of a scheme to hinder and delay the Association's legitimate collection efforts. The one-half interest in the Penthouse was purportedly transferred to Mr. Moore on November 18, 2013, and no consideration is believed to have been given by the Debtors for Mr. Moore's interest in the Penthouse. Approximately six months later, after Grisham and the Debtors realized there was no bankruptcy stay in Grisham's bankruptcy case, the Debtors filed for bankruptcy in Nevada. The Debtors will not be able to show a good faith business reason for the transfer because there is none. This case was filed to hinder and delay the Association's legitimate collection efforts, a striking example of bad faith. The foreclosure sale scheduled for May 29, 2014 has been continued to August 28, 2014, adversely affecting the Association's procedural rights. As such, the automatic stay must be lifted.

Bad faith is also present because the Debtors filed their bankruptcy case in this District solely as part of scheme to hinder and delay the Association's legitimate collection efforts. As discussed above, the Debtors have no real property in Nevada. The address listed as Ms. Moore's residence does not exist. It is unlikely the Debtors have any connection to Nevada at all, meaning venue is not proper in this District, further exposing the Debtors' lack of good faith. As the Debtors' lacked good faith in filing this bankruptcy case, cause is present for relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1).

//
//
//
//
//

### B. In Rem Relief from the Automatic Stay

Subsection (d)(4) of Section 362 provides:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
    (4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either--
        (A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or
        (B) multiple bankruptcy filings affecting such real property.

In rem relief under Section 362(d)(4) is appropriate when, "the following three elements are present: (1) the debtor's bankruptcy filing was part of a scheme; (2) the object of the scheme was to delay, hinder or defraud creditors; and (3) the scheme must involve either (a) the transfer of some interest in the real property without the secured creditor's consent or court approval, or (b) multiple bankruptcy filings affecting the property. *First Yorkshire Holdings, Inc. v. Pacifica L 22, LLC. (In re First Yorkshire Holdings, Inc.)*, 470 B.R. 864, 870-871 (B.A.P. 9th Cir. 2012).

Each element is present, and, as such, the Court should grant in rem relief pursuant to Section 362(d)(4).

<u>1. The Debtors' Bankruptcy Filing Was Part of a Scheme</u>

For purposes of Section 362(d)(4), a scheme is an "'intentional artful plot or plan to delay, hinder or defraud creditors.'" *In re Dorsey*, 476 B.R. 261, 266 (Bankr. C.D. Cal. 2012) (quoting *In re Duncan & Forbes Development, Inc.*, 368 B.R. 27, 32 (Bankr. C.D. Cal. 2006) (in turn citing *Black's Law Dictionary* (8th ed. 2004))). Section 362(d)(4) contains no requirement that "it be the debtor who has created the scheme or carried it out, or even that the debtor be a party to the scheme at all." *In re Duncan*, 368 B.R. at 32 (cited with approval by *In re Dorsey*, 476 B.R. at 267). Furthermore, the statutory language is "devoid of any requirement of a finding of bad faith by the debtor." *In re Dorsey*, 476 B.R. at 267.

Here, the factual background and a cursory review of the Petition and the schedules filed to date show the Debtors' bankruptcy filing is part of a scheme. The Debtors accepted transfer of the Penthouse for no consideration approximately six months prior to their bankruptcy filing. When the Association most recently attempted to foreclose on the Penthouse, Grisham filed bankruptcy, hoping to delay the foreclosure sale. Due to his many previous bankruptcy filings, the Association realized there was no stay in Grisham's bankruptcy case and the foreclosure sale scheduled for May 29, 2014 at 12:00 noon Hawaii-Aleutian time could go forward. The Debtors filed for bankruptcy on May 29, 2014, at 10:47 a.m. Pacific time, mere hours before the scheduled foreclosure sale. Indeed, the Association received notice of the Debtors' filing approximately 90 minutes before the foreclosure sale was to take place. Given Grisham's prior bankruptcy filings, Ms. Moore's prior bankruptcy filings, the transfer of the Penthouse for no consideration, and the timing of the Debtors' current bankruptcy case, it can only be concluded that the Debtors' current bankruptcy filing is part of an intentional artful plot or plan to delay, hinder or defraud the Association and that the Debtors are heavily involved in this scheme.

2. <u>The Scheme's Object Was to Delay and Hinder the Association's Collection Efforts</u>

One need only consider the timing of the Debtors' bankruptcy filing to conclude the purpose of the Debtors' scheme was to hinder and delay the Association's legitimate collection efforts. The Debtors accepted transfer of the Penthouse to help shield the Penthouse from the Association's legitimate collection efforts. When it became clear Grisham's tactic of repeatedly filing for bankruptcy would no longer block foreclosure on the Penthouse, it was the Debtors' turn, and they filed for bankruptcy the very day the Association's foreclosure sale was to go forward. Given the choice of appropriate forums in which to file bankruptcy, locations in which they have already filed for bankruptcy, the Debtors chose Nevada, a jurisdiction with which they have no known connection, making it more difficult for the Association to seek redress for the harms caused to them. There can be no other object of the scheme but that it was intended to, and did in fact, delay and hinder the Association's legitimate collection efforts.

3. The Scheme Involved Both the Transfer of the Penthouse and Multiple Bankruptcy Filings

As discussed above, the scheme involved the transfer of the Penthouse to the Debtors on November 18, 2013, and this transfer was for no consideration. Further, as discussed above, Grisham has filed for bankruptcy five times in Hawaii, all in an effort to hinder and delay the Association's collection efforts. With the Debtors' current bankruptcy filing in Nevada, there have been six bankruptcy filings affecting the Penthouse.

Each element required for relief from the automatic stay pursuant to Section 362(d)(4) is present. The Association has seen its legitimate collection efforts hindered and delayed by Grisham and the Debtors for long enough. Cause is present for in rem relief pursuant to Section 362(d)(4), and, thus, the Association requests the Motion be granted.

### *C. Waiver of the Rule 4001(a)(3) Stay of Effectiveness*

The Association has already faced many years of delay in its efforts to foreclose on its security interest in the Penthouse and obtain payment of the delinquent Dues. It has been forced to spend thousands of dollars in legal fees, and now it has been delayed by the Debtors yet again in its legitimate collection efforts. Every delay means not only that the Dues remain unpaid, but also that the time until a new owner can take ownership of the Penthouse and begin timely paying the required dues becomes more distant. For this reason, and due to Grisham's and the Debtors' actions, as discussed above, cause is present for waiver of the fourteen day stay of effectiveness provided by Rule 4001(a)(3).

### **V. Conclusion**

For all of the above reasons, the Association respectfully requests the Court enter an order: (i) pursuant to 11 U.S.C. § 362(d)(1), granting relief from the automatic stay, ordering that the automatic stay applicable to the Penthouse be terminated as to the Association, and allowing the Association to take any legally authorized action with respect to the Penthouse, including, but not limited to, foreclosure of its security interest in the Penthouse; (ii) pursuant to 11 U.S.C. § 362(d)(4), granting the Association in rem relief from the automatic stay with respect to the Penthouse, and making such relief binding in any other case filed under Title 11 of the United States Code within two years of the date of such order once such order is recorded in compliance with applicable State law; (iii) waiving the

fourteen day stay of effectiveness imposed by Rule 4001(a)(3), such that any order entered is effective immediately upon entry; and (iv) granting such additional relief as the Court deems appropriate under the circumstances.

Dated this 30th day of June, 2014.

Respectfully submitted by:

**ANDERSEN LAW FIRM, LTD.**

By: /s/ Ryan A. Andersen
Ryan A. Andersen, Esq.
Nevada Bar No. 12321
415 South 6th Street, Suite 203B
Las Vegas, Nevada 89101

*Attorney for Secured Creditor Association of Apartment Owners of Ala Wai Mansion*